IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BRIDGET LATRICE WALKER,**

                     *Plaintiff,*

*v.*                                                          Cause No. 3:22-CV-401-CWR-FKB

**GREATER JACKSON MORTUARY /
THE HERITAGE GROUP,**

                     *Defendant.*

## ORDER

Before the Court is the Defendant's motion to dismiss, Docket No. 12, the Plaintiff's "*Motion to Deny*" the motion to dismiss (which the Court construes as a response in opposition), Docket No. 13, and the Defendants' reply, Docket No. 14. Upon review, the motion to dismiss will be **GRANTED** in part and **DENIED** in part.

**I.    Factual and Procedural History**

On February 10, 2023, Plaintiff Bridget Latrice Walker filed her *Amended Complaint* in this case against Greater Jackson Mortuary ("GJM") and The Heritage Group.[1] Docket No. 9. The following facts are alleged in Walker's *Amended Complaint* and supporting documentation and, at this stage in the proceedings, are accepted as true.

Walker was hired by GJM as a driver and student embalmer in September 2021. Docket No. 1-2 at 1. On January 4, 2022, GJM was sold to Heritage Operating, LLC. Docket

---

[1] Walker incorrectly named Heritage as "Heritage Operating, LLC" in her EEOC charge and as "Greater Jackson Mortuary/The Heritage Group" in her civil suit. Docket No. 9. The correct name of the entity she seeks to sue is Heritage Mississippi, LLC.

No. 12 at 1 n.1. Heritage Mississippi, LLC, the proper defendant here, is a wholly owned subsidiary of Heritage Operating, LLC. After the company was sold, much of GJM's staff, including Walker, remained employed and on the payroll. Docket No. 9 at 3.

During those first post-sale months, the company experienced issues paying its employees. *Id.* at 2. Some employees received their paychecks via direct deposit, while other employees received their checks in the mail. *Id.* at 2–3. After Walker did not receive a check, she filed a complaint with the Department of Labor Wage and Hour Division. *Id.* at 3. Walker alleges that upon receiving notice of the complaint, the company's owner became upset with her and instructed the general manager, Daniel Billiot, to fire her. *Id.*

Walker also alleges that she experienced sexual harassment while employed at GJM. *Id.* at 1. She contends that her then-boyfriend, Arrick Rice, cheated on her with another employee, Mishi Jones, and that soon after, Rice and Jones attempted to influence the general manager to fire Walker. *Id.* at 2. Additionally, Walker described the work environment at GJM as akin to a "prostitute facility," with four couples employed there during her tenure. *Id.* She alleges that her termination and Jones' subsequent hiring to replace her constituted sexual harassment, because "if Arrick Rice and I [were] still dating I would have [the] job, but once he broke up with me, I [got] fired and his new girlfriend [got] hired." *Id.* Walker adds that a coworker inquired if she was on her menstrual cycle. Docket No. 9-1 at 19.

These incidents led Walker to complain to the Equal Employment Opportunity Commission (EEOC). In her Charge of Discrimination with the EEOC, Walker alleges that Heritage discriminated against her due to her sex and retaliated against her in violation of Title VII of the Civil Rights Act of 1964. Docket No. 11-2 at 1. Walker later avers in her

*Amended Complaint* that she experienced sexual harassment and retaliation, but does not specify the statute(s) under which she brings her claims. Docket No. 9 at 1-3. On March 10, 2023, Heritage Mississippi, LLC filed the present motion to dismiss.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court accepts a plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. Though a plaintiff need not "plead detailed factual allegations," a successful complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. A claim must be "plausible on its face"—that is, it must enable the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Id*.

While *pro se* plaintiffs are held to "a more lenient standard than lawyers," this Circuit still requires that *pro s*e plaintiffs "plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

## III.     Discussion

### A.     Title VII's Exhaustion Requirement

Heritage first argues that the Court should not reach the merits of Walker's arguments because she failed to exhaust her administrative remedies with the EEOC. Docket No. 12 at 3. Specifically, Heritage claims that Walker incorrectly named Heritage on her EEOC charge

3

when she listed "Greater Jackson Mortuary/Heritage Operating, LLC" instead of "Heritage Mississippi, LLC." *Id.* at 5–6. For this reason—and because the 180-day window for filing a charge against "Heritage Mississippi, LLC" has since elapsed—Heritage argues that Walker's claims should be dismissed with prejudice. *Id.* at 6.[2]

The Court declines to embrace so narrow an understanding of Title VII's exhaustion requirement. Following Fifth Circuit precedent, this Court "interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (citation and quotation marks omitted). That broad reading is appropriate "because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se." *Id.* (citation and quotation marks omitted).

Further, the Fifth Circuit has recognized multiple exceptions to Title VII's named-party requirement. For example, the court has held that an "unnamed party [may] be sued in court despite not being named in the charge" when "there was sufficient identity-of-interest between the named and the unnamed party." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 482 (5th Cir. 2014), *as revised* (Sept. 18, 2014) (citing *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)). To determine whether sufficient identity-of-interest exists, courts examine:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

---

[2] The Court notes at the outset that Walker timely filed her charge. The EEOC issued its Determination and Notice of Rights without making any determination as to whether further investigation would establish violations of Title VII. But, as that letter explained, that "[t]his does not mean the clams have no merit." Docket No. 1-1. Walker then timely filed her lawsuit in this Court.

4

2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and
4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Simbaki*, 767 F.3d at 482 (quoting *Glus*, 562 F.2d at 888.)

Upon review, this Court finds that Walker sufficiently exhausted her administrative remedies. Walker's charge erred on one word when she listed "Heritage Operating, LLC" instead of "Heritage Mississippi, LLC." Because Heritage Mississippi, LLC is a wholly owned subsidiary of Heritage Operating, LLC, though, the interests of the named party are so similar to the unnamed party's that "for the purpose of obtaining voluntary conciliation and compliance it would [have been] unnecessary to include the unnamed party." *Id.* For similar reasons, it is likely that the identity of Heritage Mississippi, LLC would have "grow[n] out of" an EEOC investigation into Walker's claims, *Pacheco*, 448 F.3d at 789 (cleaned up), and that the role of Heritage Mississippi, LLC could have been "ascertained through reasonable effort." *Simbaki*, 767 F.3d at 482 (citation omitted).

  **B.**  **Title VII's Employer-Employee Relationship Requirement**

Next, Heritage asserts that Walker was not an employee of the mortuary, but rather an independent contractor. Docket No. 12 at 6-7. For this reason, it says that Walker's claims must be dismissed given that Title VII requires an employer-employee relationship. *Id.* Heritage acknowledges that Walker specifically alleges that she was an employee of the

5

mortuary, but notes that Walker attached multiple check stubs to her Amended Complaint which indicate that they were for "contract labor." *Id.* at 7.

Upon review, the Court finds that it would be inappropriate at the motion to dismiss stage to decide whether Walker was an employee or an independent contractor.

"An 'employee' under Title VII is defined in pertinent part as 'an individual employed by an employer.'" *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013) (quoting 42 U.S.C. § 2000e(f)). "The Supreme Court has noted that this definition 'is completely circular and explains nothing.'" *Id.* (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). "Recognizing the circularity in such a definition, the Supreme Court explained that 'when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Arbaugh v. Y & H Corp.*, 380 F.3d 219, 226 (5th Cir. 2004), *rev'd on other grounds by* 546 U.S. 500 (2006).

The Fifth Circuit applies an "economic realities/common law control test . . . [to] determin[e] whether a party is an employee or an independent contractor." *Juino*, 717 F.3d at 434 (citation and quotation marks omitted). This means that notwithstanding the existence of check stubs bearing the term "contract labor," Walker may have been an employee of the mortuary if she was "dependent upon the business to which [she] render[ed] service" (the economic realities portion of the test) or had little "right to control the details and means by which the work [was] to be performed" (the common law control portion to the test). *Id.* (citation and quotation marks omitted). The factors pertinent to this analysis are:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of *435 work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated [,] i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"[,] (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 434–35 (cleaned up).

The Court does not analyze these factors now because the parties have not raised them. Nor, at this stage, can the Court make the factual determinations necessary to decide this question. But the Court references this test to emphasize that the checks' memo lines are not necessarily dispositive of whether Walker was an employee or independent contractor.

### C.  Walker's Sexual Harassment Claim

Next, Heritage asserts that Walker's *Amended Complaint* does not state a cognizable claim for sexual harassment. Docket No. 12 at 7.

Sexual harassment claims generally take one of two forms: hostile work environment or quid pro quo. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002). Because Walker's complaint did not specify which type of sexual harassment claim she asserted, this Court analyzes both.

#### 1.  Hostile Work Environment

To establish a prima facie hostile work environment claim, a plaintiff must show that (1) she is a member of a protected class; (2) she was the victim of unwelcome sexual

7

harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition or privilege of the plaintiff's employment. *See Wiggins v. St. Luke's Episcopal Health Sys.*, 517 F. App'x 249, 251 (5th Cir. 2013) (outlining factors). Finally, if the harassment was by a co-worker, "the plaintiff must also show (5) that [her] employer knew or should have known of the harassment and failed to take prompt remedial action." *Id*. Under the fourth prong, a court will find that Harassment affects a term, condition, or privilege of employment if the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citation and quotation marks omitted).

After reviewing Walker's *Amended Complaint* and the attached documents, the Court finds that Walker did not state a claim of hostile work environment. The incidents that Walker mentions were not severe or pervasive enough as to create a plausible claim for Title VII sexual harassment, as the Defendant demonstrated through the cases cited in its brief. Docket No. 12 at 11–15. The incidents cited by Walker could not have affected a term, condition, or privilege of her employment.

For these reasons, Walker has failed to state a hostile work environment claim.

### 2.     Quid pro quo

Next, this Court examines whether Walker has stated a claim for quid pro quo sexual harassment. To establish a Title VII quid pro sexual harassment claim in this Circuit,

> a plaintiff must show that the acceptance or rejection of a supervisor's alleged sexual harassment resulted in a tangible employment action. A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

> In addition, a plaintiff must show a "causal nexus" between the acceptance or rejection of the sexual advances and the tangible employment action.

*Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009) (citations omitted).

Upon review, Walker has also failed to state a claim of quid pro quo sexual harassment. Her *Amended Complaint* does not allege facts that suggest that she was harassed by her supervisor, Daniel Billot, or that her acceptance or rejection of any harassment led to her adverse employment action. Thus, Heritage's motion to dismiss Walker's sexual harassment claim(s) will be granted.

### D.     Walker's Retaliation Claim

Next, Heritage offers several reasons why Walker's retaliation claim should be dismissed. The one with the most applicability here is Heritage's argument that "a retaliation claim under 42 U.S.C. § 2000e-3(a) only arises when an adverse employment action is taken against an employee who 'has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing *under this subchapter*.'" Docket No. 12 at 17–18 (quoting 42 U.S.C. § 20000e-3(a)). Heritage says that because the Department of Labor does not fall under Subchapter VI—in other words, because Walker participated in a proceeding with the Department of Labor rather than the EEOC—no actionable retaliation claim under Title VII has surfaced.

Under this logic, Heritage has persuasively argued that Walker cannot pursue a Title VII retaliation claim. The factual basis of Walker's retaliation claim, however, is that she faced reprisal for filing a complaint with the Department of Labor, not for engaging in conduct protected under Title VII. Docket No. 9 at 3. There is a separate statute, the Fair Labor

9

Standards Act (FLSA), that prohibits retaliatory actions against employees who file complaints with the Department of Labor.

Given the factual allegations in the *Amended Complaint*, the Court must construe Walker's "retaliation" cause of action as a retaliation claim asserted under the FLSA. In so doing, this Court is mindful of the Supreme Court's instruction that "the federal rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) (summarily reversing the Fifth Circuit's entry of summary judgment against a plaintiff for failing to invoke a precise legal theory in their complaint); *see also* 5 Wright & Miller, Fed. Prac. & Proc. § 1215, at 172 (3d ed. 2004) (stating that Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities"). Further, this Court, like all courts, must hold *pro se* plaintiffs to "a more lenient standard than lawyers when analyzing complaints." *Chhim*, 836 F.3d at 469.

To plausibly allege retaliation under the FLSA, a plaintiff must allege "(1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). The "hallmark of protected activity" is "the assertion of statutory rights (*i.e.,* the *advocacy* of rights) by taking some action adverse to the company— whether via formal complaint, providing testimony in an FLSA proceeding, complaining to superiors about inadequate pay, or otherwise." *Id.* at 627. In marked contrast to Title VII, the FLSA allows employees to file suit directly in court without having to first exhaust their administrative remedies. *Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1066 (5th Cir. 2016).

The facts alleged in Walker's Amended Complaint meet all the elements of a FLSA retaliation claim. First, Walker participated in an activity protected under the FLSA: taking an "adverse action" against the mortuary by filing a complaint with the Department of Labor. *Hagan*, 529 F.3d at 627; Docket No. 9 at 3. Second, Walker experienced an adverse employment action when she was fired. Docket No. 9 at 3. Third, Walker alleged a causal nexus between the protected activity and the adverse action when she said that her employer fired her because of her Department of Labor complaint. Specifically, after she went to the Department of Labor, Walker alleges that "the general manager [] said the owner was upset with me and wanted him to fire me." *Id.* at 9. She also attached a screenshot of a contemporaneous text message in which she states that she "heard that [she was] supposed to [be] fired in the next couple of months . . . [b]ecause [she] went to the labor board." Docket No. 9-1 at 19.

For these reasons, this Court finds that Walker has stated a claim for retaliation under the FLSA.[3]

## IV. Conclusion

The motion to dismiss is **GRANTED** as to Walker's sexual harassment claim and **DENIED** as to Walker's retaliation claim.

**SO ORDERED**, this the 4th day of August, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[3] Further, because the "economic reality" test is used to determine employee status under the FLSA, *Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012), the Court reasserts its previous analysis regarding the insufficiency of the check stubs to preclude her FLSA claim.